IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DANIEL L. HALL, Sr.,

        **Plaintiff,**

v.                                                                Civil Action No. 3:14cv136
                                                                                  (GROH)

CO. JUSTIN JAMES; BRANDY MILLER,
Associate Warden Programs, KAREN
PSZCZOLKOWSKI, Warden;
DALE GRIFFITH, Unit Manager;
NORTHERN CORRECTIONAL FACILITY;
DOC; COMMISSIONER JIM RUBENSTEIN;

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On December 23, 2014, the Plaintiff initiated this case by filing a *pro se* complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983. ECF No. 1. On January 6, 2015, the Plaintiff was granted leave to proceed *in forma pauperis*. ECF No. 7. On January 23, 2015, the Plaintiff paid the required initial partial filing fee. ECF No. 9. Upon a preliminary review of the complaint, the Court determined that summary dismissal was not appropriate at that time and directed the United States Marshal Service to serve the complaint. ECF No. 15.

On October 14, 2015, the Defendants filed a Motion to Dismiss. ECF No. 20. Because the Plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on November 6, 2015. ECF No. 22. On November 20, 2015, the Defendants filed a Supplemental Memorandum in support of their Motion to Dismiss. ECF No. 29. On November 25, 2015, Plaintiff filed a Response in Opposition to the Motion to Dismiss. ECF No. 30.

## II. Contentions of the Parties

### A. The Complaint

The allegations in the Plaintiff's complaint stem from an incident which occurred at the Northern Correctional Facility on November 23, 2014. The Plaintiff's first claim is that he was sexually assaulted, humiliated, retaliated against and raped. In support of this claim, he alleges that while patting him down, CO James "reached around and rubbed my entire genital area, penis sack, then ball banged me from behind and ran his hand up my ass crack so hard it caused my underwear and his finger go inside my asshole." ECF No. 1 at 7. Moreover, the Plaintiff alleges that these actions happened on his way to church and then again on the way back. The Plaintiff also alleges that other inmates complained about CO James' actions that night.

The Plaintiff's second claim is failure to protect and deliberate indifference. More specifically, the Plaintiff alleges that his unit manager, Dale Griffith, refused to contact state police regarding CO James' actions and refused to have the medical department treat his injuries even after he "requested it several times." ECF No. 1 at 8

The Plaintiff's third claim is retaliation and conspiracy to cover up a felony of rape, sexual assault and deliberate indifference. In support of this claim, the Plaintiff alleges that Brandy Miller, who is the associate warden of operations, called him into her office and told him his claims were unsubstantiated. In addition, he alleges that she refused to allow staff to contact the West Virginia State Police and told him "since you filed a lawsuit against me, you can die for all I care." ECF No. 1 at 8.

The Plaintiff's fourth claim is that Karen Pszczolkowski, the warden, failed to protect him, was deliberately indifferent and conspired to cover up a felony of sexual assault and rape. In support

of this allegation, the Plaintiff alleges that Warden Pszczolkowski was made aware of his complaint through his administrative grievance but found that they were unsubstantiated. In addition, he alleges that she allowed CO James to work in direct contact with him and failed to allow medical to evaluate his injuries. Finally, he alleges that she did not contact the West Virginia Police even after he requested that she do so in writing on nine occasions.

The Plaintiff's fifth and final claim is that Jim Rubenstein, the commissioner of the West Virginia Division of Corrections, is guilty of retaliation and deliberate indifference. In support of this claim, the Plaintiff alleges that he denied his grievance thereby condoning the assault.

For relief, the Plaintiff seeks immediate discharge from the custody of the DOC. In addition, he seeks $500,000 from the Northern Correctional Complex. He also asks that CO James be fired and that criminal charges be brought against him for rape and sexual assault. Finally, he seeks $250,000 from each of the five individual defendants.

**B.    The Defendants' Motion to Dismiss**

In their memorandum in support of their motion to dismiss, Defendants argue that Plaintiff's complaint should be dismissed for the failure to state a claim for which relief may be granted. In support of that argument, the following assertions are made:

(1) the Plaintiff's claims against CO James, arising out of a pat-and-search before and after prisoner transportation to church, do not rise to the level of an 8th Amendment violation and must be dismissed;

(2) Defendants are entitled to qualified immunity from the Plaintiff's suit under the circumstances alleged;

(3) Allegations based upon a theory of *Respondeat Superior* or claims against Defendants

Griffith, Miller, Ruubenstein, and Pszczolkowski in their official capacities are not permitted under 42 U.S.C.§ 1983 and must be disregarded for purposes of determining whether Plaintiff has stated a claim upon which relief can be granted;

(4) Plaintiff has not alleged facts that sufficiently state a claim of deliberate indifference against Defendants Griffith, Miller, Rubenstein, and Pszczolokowski;

(5) Plaintiff has not alleged facts that sufficiently state a claim of retaliation against Defendants James, Miller, and Rubenstein;

(6) Plaintiff has not alleged facts that sufficiently state a claim of conspiracy against Defendants Miller and Pszczolkowski;

(7) Plaintiff's naming of Northern Correctional Facility and the Department of Corrections in this Complaint is not permitted under 42 U.S.C. § 1983, and the Plaintiff further fails to make a single allegation against either facility;

(8) Plaintiff has already filed three frivolous complaints, and therefore cannot continue this complaint *in forma pauperis*; and

(9 ) Any claim for punitive damages against Northern Correctional Facility or any other Defendant in their official capacity must be dismissed pursuant to W.Va. Code § 29-12A-7(A).

## C. **Defendants' Supplemental Memorandum**

In their supplemental memorandum, the Defendants clarify their argument that the Plaintiff has accumulated three strikes. In particular, they note that at the time they filed their Motion to Dismiss and original memorandum, United States Magistrate Judge Seibert had recommended the dismissal with prejudice of cases No. 2:14cv91 and No. 5:14cv150, but the Court had not adopted those recommendations. However, the recommendation in Case No. 2:14cv91 was adopted by the

Court on October 26, 2015, and his recommendation in Case No. 5:14cv150 was adopted by the Court on November 4, 2015. In addition, the supplemental memorandum corrects two drafting errors, and concludes by noting that the Plaintiff has now filed three cases that have been dismissed for frivolity and for failure to state a claim. Therefore, the Defendants argue that "pursuant to 28 U.S.C. § 1915, the instant case must be dismissed and Plaintiff must refile this action with his own money, rather than burdening the taxpayers of this country with yet another frivolous complaint." ECF No. 29 at 3.

D. **Plaintiff's Response**

In response to Defendants' Motion and the Roseboro Notice, Plaintiff filed a letter which reads in pertinent part as follows:

> I Daniel Hall have had some sort of stroke or anurism [sic], I cannot comprehend what was the words mean in the documents sent, I am currently awaiting treatment by Doc staff for the problem.
>
> I am on staff contact only status so I can not have the assistance of a legal rep to explain this to me.
>
> I do not wish to dismiss the suit against CO James, the other parties I don't care about but James hurt me, I have permanent injuries to my scrotum and he penetrated my rectum against my will. There are a number of witnesses to this at NCF that I could call to court on my behalf, I don't know how to proceed at this point . . . .

ECF No. 30.

### III. Standard of Review

A. **Motion to Dismiss**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a defendant to challenge the

5

complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion, courts assume that the complaint's well-pleaded allegations are true, resolve all doubts and inferences in favor of Plaintiff and view the allegations in a light most favorable to Plaintiff. Edwards, 178 F.3d at 243-44. Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## IV. Analysis

**A. Three Strikes**

After the enactment of the Prison Litigation and Reform Act (PLRA) of 1996, the following subsection was added to 28 U.S.C. § 1915:

> (g) In no event shall a prisoner bring a civil rights action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

A review of this Court's case filing system establishes that between November 14, 2014, and April 29, 2015, the Plaintiff filed eight cases, including the instant case. Of those, two were 1983 actions which were dismissed with prejudice as frivolous, malicious and for the failure to state a claim upon which relief can be granted. The first was filed on November 14, 2014, and was dismissed on November 4, 2015. See Civil Action No. 5-15-cv-00150-FPS-JES. The second was filed on November 25, 2014, and dismissed on October 26, 2015. In addition, on April 29, 2015, the Plaintiff filed a Petition for Writ of Mandamus, which was dismissed as legally frivolous. See 5:15cv00051-FPS-RWT. On Appeal, the Fourth Circuit affirmed the dismissal. Id. at ECF No. 29. Therefore, arguably[1], the Plaintiff has now accumulated three strikes which will prohibit him from filing future cases without first paying the filing fee.

However, the instant case was filed December 23, 2014, before two of the dismissed cases were even filed, and well before any of the three cases were dismissed under 28 U.S.C. § 1915(g).

---

[1]There is some debate as to whether a mandamus dismissal can be considered a strike. Compare Bennett v. Plumley, 2014 WL 3853434 (S.D. W.Va. Aug. 5, 2014) (Order adopting R&R finding plaintiff's Petition for Writ of Mandamus for Immediate Release from Custody "as being legally frivolous and failing to state a claim upon which relief can be granted."); Wilson v. U.S. Parole Comm'n., 2012 WL 7856824 (E.D. Va. Jan. 31, 2012) (petition for mandamus dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. §1915(A)(b)(1), advising plaintiff that pursuant to 28 U.S.C. § 1915A(g) the dismissal may affect his ability to proceed IFP in future civil actions; and directing Clerk to record the dismissal for purposes of the PLRA) with Madden v. Myers, 102 F.3d 74, 76 (3rd Cir. 19976) ("finding " a writ of mandamus is by its very nature outside the ambit of [PLRA]").

"By its terms, § 1915(g) governs only circumstances under which a prisoner may bring a civil action *in forma pauperis*, which means that its impact must be assessed at the time a prisoner files his or her complaint." Nicholas v. Corbett, 254 Fed. Appx. 117, 2007 WL 3315566 (3d Cir. 2007). Therefore, only the strikes actually earned at the time the complaint was filed are relevant. The statute does not authorize courts to revoke *in forma pauperis* status, if the prisoner later earns three strikes. See Gibbs v. Ryan, 160 F.3d 160, 163 (3d Cir. 1998) (explaining that Congress "limited the 'three strikes' provision to an inmate's ability to 'bring' an action. Congress could have tied the 'three strikes' bar to an inmate's ability to **maintain** an action. It did not do so.")

Because the Plaintiff had not accumulated three strikes when his complaint was filed, the fact that he has now accumulated those strikes is irrelevant. Accordingly, the Defendants' Motion to Dismiss based upon the three strike rule is not well founded, and the undersigned has reviewed the merits of the Defendants' remaining arguments.

**B. Northern Correctional Facility and the West Virginia Division of Corrections**

42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress, applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. §1983, the Plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the

Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

In the instant case, in addition to the individual defendants, the Plaintiff names the Northern Correctional Facility ("NCF") and West Virginia Division of Corrections ("WVDOC") as defendants. However, neither the NCF nor the WVDOC is a proper defendant, because neither is a person subject to suit under 42 U.S.C. §1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) ( "[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. §1983); Brooks v. Pembroke Jail, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) ("Claims under §1983 are directed at 'persons' and the jail is not a person amenable to suit."); Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) ( Neither a State nor its officials acting in their official capacities are "persons" under 42 U.S.C. §1983). This rule applies "to States or governmental entities that are considered 'arms of the State for Eleventh Amendment purposes." Will, 491 U.S. at 70. As a State detention facility, NCF is an arm of the state and is not a "person" amenable to suit under 1983. Likewise, the WVDOC is an arm of state. Therefore, the NCF and WVOC are not a proper party to this suit and must be dismissed from this action.

**C. James/Excessive Force**

Analysis of a claim for use of excessive force begins with "identification of the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments.[2] The validity of the prisoner's claim must "be judged by

---

[2]The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666–67 (1962).

reference to th[is] specific constitutional standard...rather than to some generalized 'excessive force' standard." Graham, 490 U.S. at 394; see, e.g, Whitley v. Albers, 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner is to be analyzed under an Eighth Amendment standard).

To state an Eighth Amendment claim, an inmate must prove two factors: (1) objectively, the alleged punishment or act is sufficiently serious that it violates contemporary standards of decency; and (2) subjectively, the prison official must have a sufficiently culpable state of mind. Farmer v. Bennan, 511 U.S. 825, 834 (1994); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The subjective component of the claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillan, 503 U.S. 1, 7 (1992). The question of whether the measure taken inflicted unnecessary and wanton pain and suffering turns on "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether a prison official acted maliciously and sadistically, the court should consider the following: "the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks omitted).

Also, the inmate must prove the corrections officer's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8.). In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."

Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). When prison official use force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated . . . . This is true whether or not [sic] significant injury is evident." Hudson, 503 U.S. at 9. However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

As previously noted, Plaintiff's excessive force claim against CO James stems from a pat search which he alleges amounted to a sexual assault and rape. The undersigned notes that similar claims have been raised and dismissed for not rising to the level of an Eighth Amendment claim. See, e.g., Caldwell v. Crossett, No. 9:09cv576, 2010 WL 2346337 (N.D. N.Y. May 24, 2010) (claim that corrections officer grabbed plaintiff's testicles during a pat-frisk causing serious pain around his groin area failed to allege a violation of the Eighth Amendment based upon claims of sexual abuse or excessive force); Excell v. Fisher, No. 9:08cv945, 2009 WL 3111711 (N.D. N.Y. Sept. 24, 2009) (allegations that guard grabbed and squeezed prisoner's penis during pat-frisk insufficient to state an Eighth Amendment claim); Morrison v. Cartwright, 397 F.Supp.2d 424 (W.D.N.Y.2005) (allegation that corrections officer shown light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate upon himself, and rubbing his penis against inmate's buttocks during strip search did not implicate Eighth Amendment.).

Here, the Plaintiff alleges two incidents, which he describes as happening on the way to and from church. Because he only describes a single sequence of events, the Court can only assume that the pat down occurred in the same manner each time. Given the rulings cited above, and the fact

that, at most, the alleged improper pat downs occurred only twice[3], the actions attributed to CO. James do not rise to an Eighth Amendment violation, and the claims against this Defendant should be dismissed.

**D. Commissioner Rubenstein**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.[4] See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, Plaintiff's complaint makes no specific allegations against Rubenstein to indicate that he was personally involved in any alleged violation of his constitutional rights. Rather, he alleges only that Commissioner Rubenstein denied his grievance. However, this is not the type of personal involvement required to state a § 1983 claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D. Md. March 31, 2003).

Accordingly, it appears that Plaintiff has merely named Rubenstein in his official or

---

[3] "A small number of incidents in which [Plaintiff] was verbally harassed, touched, and pressed against without his consent" were not enough to be "objectively, sufficiently serious," nor were the incidents "cumulatively egregious in the harm they inflicted." to "involve a harm or federal constitutional proportions as defined by the Supreme Court." Bodie v. Schnieder, 105 F.3d 857 (3rd Cir. 1997).

[4] To the extent Plaintiff may be asserting that Rubenstein violated his constitutional rights by denying his administrative grievance, that claim is without merit. This is not the type of personal involvement required to state a § 1983 claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

supervisory capacities as Commissioner of the West Virginia Division of Corrections. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). In this case, Plaintiff fails to assert that a policy or custom of the prison played a part in the alleged violation of his constitutional rights.

**E. Warden Pszczolkowski and Assistant Warden of Operations Miller**

   1. **Supervisory Liability**

A supervisory may be liable under § 1983 if the conduct causing the deprivation was carried out to effectuate an official policy of custom for which the Official is responsible. Fisher v. Wash. Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), or if the following elements are shown:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisors response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices []"; and (3) that there was an "affirmative causal link" between the supervisor's an action and the particular constitutional injury suffered by the plaintiff.

Shaw v. Straud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994). The first element requires showing that the supervisor had knowledge of her subordinates conduct, and that such "conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Id. To establish a pervasive and unreasonable risk of harm, the plaintiff must show "that the conduct

is widespread, or at least has been used on several different occasions and that the conduct . . . poses an unreasonable risk of harm of constitutional injury." Id.

The Plaintiff has offered no allegation that Pszczolkowski and Miller knew about James' alleged pat down procedures before November 13, 2014. In fact, he fails to allege any specific knowledge of James' actions. Even if it were plausible that Pszcacolkowski and Miller had personal knowledge of James' actions after the Plaintiff filed a grievance regarding the alleged "rape and sexual assault," the Plaintiff fails to allege sufficient facts to show that James' "conduct pose[d] a pervasive and unreasonable risk of constitutional injury to the plaintiff." Even assuming that those requirements were met, the Plaintiff fails to plead any facts showing that the subordinates' conduct was "widespread, or at least ha[d occurred [] . . . on several different occasions." Id. Therefore, the Plaintiff fails to plead sufficient facts to state a claim of supervisory liability as to these two defendants.

**2. Retaliation**

With respect to Miller, the Plaintiff alleges that she retaliated against him.[5] In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, "*in forma pauperis* plaintiff's claim that their constitutional rights have been violated by official retaliation must present more than a naked conclusory allegations of reprisal to survive to survive [§ 1915(e)(2)(B)]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d

---

[5]The Plaintiff also inserts the word "retaliation" in his allegation against both James and Rubenstein. However, the undersigned can discern no action allegedly taken by either of these Defendants that even under the most liberal interpretation could be construed as retaliation.

1310, 1317 (4th Cir. 1996). Additionally, "a plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia*, that she suffered some adversity in response to her exercise of protected rights." American Civil Liberties Union of Maryland, Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993).

To the extent, that the Plaintiff is alleging that Miller retaliated against him for filing grievances, inmates do not have a constitutional right to participate in grievance procedures. Adams, 40 F.3d at 75. Therefore, the Plaintiff can state no retaliation claim regarding the filing of his grievances. In addition, to the extent the Plaintiff is alleging that Miller retaliated against him for filing a previous lawsuit against her, he fails to state an appropriate claim. See Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996) (when alleging denial of access to the courts, the prisoner must make specific allegations and must also identify an actual injury resulting from official conduct). Here, the Plaintiff fails to make any specific allegation that he was denied such access or to show any actual injury from the alleged conduct. In fact, between both the Northern and Southern Districts of West Virginia, the Plaintiff filed thirteen (13) actions between November 23, 2014 and August 19, 2014. See PACER. Accordingly, the Plaintiff's retaliation claim should be dismissed with prejudice for the failure to state a claim.

### 3. Conspiracy

To establish a civil conspiracy, a plaintiff must prove that two or more persons acting jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's deprivation of a constitutional right. Hinkle v. City of Clarksburg, WV, 81 F.3d 416 (4th Cir. 1996). Moreover, a plaintiff has a "weighty burden to establish a civil rights conspiracy." Id. at 421. While the plaintiff does not need to "produce direct evidence of a meeting of the minds, [he]

15

must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id. In this case, that means the Plaintiff must produce evidence that it leased leads to the inference that the Defendants had a mutual agreement to retaliate against him. Nevertheless, "mere speculation and conjecture will not suffice." Puglisee v. Cobb County, 4 F. Supp.2d 1172, 1181 (N.D. Ga. 1998).

Here, the Plaintiff provides no factual allegation which would lead to even an inference that Pszczolkowski and Miller had an agreement to conspire against him and "cover up a felony of rape/sexual assault." At best, the Plaintiff offers speculation and conjecture, which is not sufficient to state a claim for conspiracy. Thus, the Plaintiff has failed to establish that a civil conspiracy existed in his conspiracy claim should be dismissed.

## F. DALE GRIFFITH, Unit Manager

The Plaintiff's allegation against Griffith is that he "took my complaint, but refused to contact state police, refused to have medical document my injuries or treat my injuries even after I requested it several times." ECF No. 1 at 8.[6] This allegation by the Plaintiff, to the extent it might rise to the level of deliberate indifference, is refuted by the grievance form he attached to his complaint. ECF No. 1-1 at 1. The Plaintiff was seen by medical and was placed on suicide watch. In addition, he was scheduled to be seen by mental health. Finally, in regard to the sexual misconduct allegation, the jail investigated the same and found it to be unsubstantiated. To the extent the Plaintiff nonetheless believes he was sexually assaulted by James, there is no allegation that he was prevented from contacting the state police himself. Therefore, the Plaintiff has failed to

---

[6]The Plaintiff also alleges that Warden Pszczolkowski and Associate Warden Miller also refused to contact the state police and Warden Pszczolkowski refused to allow medical to evaluate his injuries. For the reasons outlined in the discussion of Dale Griffith, the Plaintiff's similar claims against Pszczolkowski and Miller likewise fail to state a claim for relief.

state a claim for relief against this Defendant.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the Defendants' Motion to Dismiss [ECF No. 20] be **GRANTED,** and the Plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket and, as well, to the Mount Olive Correctional Center. The clerk is also directed to provides a copy to counsel of record via electronic means.

DATED: June 21, 2016

    *s/ Michael John Aloi*
    MICHAEL JOHN ALOI
    UNITED STATES MAGISTRATE JUDGE